[Cite as *McClain v. Shaker Heights*, 2011-Ohio-4418.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96175**

---

## LISA McCLAIN

PLAINTIFF-APPELLANT

vs.

## CITY OF SHAKER HEIGHTS

DEFENDANT-APPELLEE

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-704888

**BEFORE:**   Cooney, J., Stewart, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:**   September 1, 2011

**ATTORNEY FOR APPELLANT**

Christopher G. Wincek
Wincek & Derosa Co., L.P.A.
1500 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

**ATTORNEY FOR APPELLEE**

Jay E. Krasovec
Schottenstein, Zox & Dunn, LPA
600 Superior Avenue, East
Suite 1701
Cleveland, Ohio 44114

COLLEEN CONWAY COONEY, J.:

**{¶ 1}** Plaintiff-appellant, Lisa McClain ("McClain"), appeals the trial court's granting summary judgment in favor of defendant-appellee, city of Shaker Heights ("Shaker"). Finding no merit to the appeal, we affirm.

**{¶ 2}** McClain began working as a custodian for Shaker in 1997. McClain's work load, in terms of lifting, was considered to be in the "medium" range.[1] In July 2005, she sustained a work related injury to her neck and shoulder while lifting 50 to 55 pounds of refuse over her head. McClain was placed on medical leave. Between August 2005 and June

---

[1] Medium work entailed lifting up to 50 pounds occasionally, up to 20 pounds frequently, and up to 10 pounds constantly.

2006, McClain's private physician, Dr. Jonathan Waldbaum, submitted reports about McClain's condition to Shaker, all of which contained various restrictions regarding the limited use of her left arm and weight restrictions in terms of lifting.

{¶ 3} In February 2006, McClain reached maximum medical improvement. In March 2006, Shaker enrolled her in a customary six-week work conditioning program with the intention of reinstating McClain to her original position at the program's conclusion. The program began with a Functional Capacity Evaluation ("FCE") to determine her initial status. This evaluation showed that McClain was "demonstrating physical capabilities that [were] not within the demand level of her original job of custodian." At the end of the six-week program, McClain underwent another FCE to re-determine her status. This FCE showed that McClain was still not able to perform lifting duties in the medium range.

{¶ 4} In June 2006, Dr. Waldbaum submitted a series of conflicting reports. The first report cleared McClain to return to medium duty work. The second report, submitted only days later, stipulated that McClain could not lift anything over 50 pounds and could only occasionally lift an item between 21 and 50 pounds. Dr. Waldbaum's third report, submitted in early July, cleared McClain for medium duty work without any restrictions.

{¶ 5} In July 2006, due to the conflicting reports, Shaker decided to conduct an additional FCE with a new evaluator. In the course of this FCE, the evaluator not only

assessed McClain but also assessed the requirements of McClain's position. Having never revised the job requirements since McClain began her employment in 1997, Shaker wanted to confirm the lifting requirements and responsibilities of McClain's job description. The evaluator visited the job site and weighed items that McClain was required to lift, both frequently and those lifted only occasionally. As a result, the evaluator found the description was outdated and the workload for the job of custodian was changed from "medium work" to "medium-to-medium-heavy work."[2] The FCE also found that McClain remained unable to perform the duties of her position, specifically her inability to occasionally lift anything over 50 pounds and to frequently lift anything between 21 and 50 pounds.

{¶ 6} McClain was terminated on July 28, 2006. The Shaker medical director had concluded that in light of the FCE results, McClain was medically unable to perform the job of a custodian.

{¶ 7} McClain filed suit against Shaker claiming disability discrimination. Shaker moved for summary judgment, arguing that McClain had failed to establish her prima facie case. The trial court granted summary judgment in favor of Shaker, finding that McClain failed to prove that Shaker regarded her as disabled.

{¶ 8} McClain now appeals, raising one assignment of error.

---

[2] Medium-to-medium-heavy work entailed lifting up to 75 pounds occasionally, up to 35 pounds frequently, and up to 15 pounds constantly.

{¶ 9} In her sole assignment of error, McClain argues that the trial court erred in granting summary judgment to Shaker because genuine issues of material fact exist as to whether Shaker regarded McClain as disabled.

<u>Summary Judgment</u>

{¶ 10} Appellate review of summary judgments is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201, as follows:

> "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274."

{¶ 11} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383,

385, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138.

Disability Discrimination

{¶ 12} R.C. 4112.02(A) makes it an unlawful discriminatory practice for any employer, because of an employee's disability, to discharge the employee without just cause. To prove a case of disability discrimination, the person seeking relief must demonstrate (1) that he or she was disabled, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was disabled, and (3) that the person, though disabled, can safely and substantially perform the essential functions of the job in question. *Rongers v. Univ. Hosps. of Cleveland, Inc.*, Cuyahoga App. No. 91669, 2009-Ohio-2137, citing *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 281, 496 N.E.2d 478. In order to establish a prima facie case of disability discrimination, McClain must prove all three elements.

{¶ 13} McClain argues that she is "disabled" under the statutory definition, was terminated because of her disability, and she can safely and substantially perform the essential functions of the custodian job. Shaker argues that McClain cannot meet any of the three elements.

{¶ 14} We begin with the first element of McClain's prima facie case. R.C. 4112.01(A)(13) defines disability as:

"[1] a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; [2] a record of a physical or mental impairment; or [3] being regarded as having a physical or mental impairment."

{¶ 15} McClain argues that her disability arises out of the third definition, because Shaker regarded her as having a physical impairment that substantially limited at least one of her major life activities.[3]    Section 1630.2(l)(1)-(3), Title 29, C.F.R.[4] defines an individual as "regarded as having a physical or mental impairment" if he or she:

---

As explained in *Ogilbee v. Bd. of Edn. of Dayton Pub. Schools,* Montgomery App. No. 23432, 2010-Ohio-1913, ¶23:

"The ADA Amendments Act that went into effect on January 1, 2009, expanded the ADA's reach under the 'regarded as' prong.   The ADA now says, 'An individual meets the requirements of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.' 42 U.S.C. 12102(3). Of course, the amendment became law after the events of this case occurred.   The Sixth Circuit has held that 'the ADA Amendments Act does not apply to pre-amendment conduct.'   *Milholland v. Sumner County Bd. of Educ.* (C.A.6, 2009), 569 F.3d 562, 567 (applying the former ADA and requiring the plaintiff to show that the defendant-employer regarded her as having a substantially limiting impairment).   The court observed that '[o]ther courts that have addressed the issue have similarly held that the ADA Amendments Act does not apply retroactively.' Id.   We will look to the former ADA."

In the instant case, McClain was terminated prior to the amendment and, thus, we will look to the former ADA.

[4]   See *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 573, 697 N.E.2d 204 ("We can look to regulations and federal cases interpreting the federal Act [ADA] for guidance in our interpretation of Ohio law.").

"(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

"(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

"(3) Has none of the impairments defined in [Section 1630.2(h)(1) or (2), Title 29, C.F.R.] but is treated by a covered entity as having a substantially limiting impairment."

{¶ 16} McClain argues that she was regarded as having a disability under the first showing, in that she had a shoulder and neck injury that did not substantially limit any major life activity, but that Shaker believed the injury substantially limited her ability to lift.[5] Although the inability to lift over a certain weight restriction is not a disability,[6] lifting has generally been considered to be a major life activity. See *Dunaway v. Ford Motor Co.* (C.A.6, 2005), 134 Fed.Appx. 872, 877; *Dupre v. Charter Behavioral Health Sys. of Lafayette Inc.* (C.A.5, 2001), 242 F.3d 610, 614; *Colwell v. Sufflok Cty. Police Dept.* (C.A.2, 1998), 158 F.3d 635, 643-644.

"Substantially limits," as set forth in R.C. 4112.01(A)(13), is defined as follows:
"(i) Unable to perform a major life activity that the average person in the general population can perform; or

---

[5] McClain also asserts in her appellate brief that Shaker believed her injury substantially limited her major life activities of carrying and working, however, she never argues these two points. Thus, we shall only address the major life activity of lifting, which she argues on appeal.

[6] In terms of lifting, "[f]ederal case law supports that a maximum weight restriction is not a disability as defined by the ADA." *Law v. Scottsdale* (C.A.6, 2000), 221 F.3d 1335 (Table); see, also, *McKay v. Toyota Motor Mfg. U.S.A., Inc.* (C.A.6, 1997), 110 F.3d 369, 373.

"(ii) Significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."

Section 1630.2(j)(1), Title 29, C.F.R.

{¶ 17} After a thorough review of the record, we find that McClain has not met her burden of demonstrating that Shaker regarded her as disabled. It is clear from the record that Shaker regarded McClain as unable to perform the duties of a custodian; Shaker did not regard her as being unable to perform the major life activity of lifting, as to the condition, manner, and duration compared to a person in the general population. See *Sadinsky v. EBCO Mfg. Co.* (1999), 134 Ohio App.3d 54, 730 N.E.2d 395 (holding that an employee's inability to lift more than 30 to 40 pounds did not substantially limit his ability to engage in ordinary daily activities). All three functional capacity evaluations clearly found that McClain was unable to perform the lifting duties of the custodian position, under both the original and the revised job descriptions.

{¶ 18} Shaker's concerns were not about McClain's ability to work in general, but about her ability to perform this specific job. The deposition testimony of McClain's supervisors illustrated their concern regarding McClain related to her ability to lift to the

degree required by the position, and the potential that she might re-injure herself in the course of doing the custodian job.

{¶ 19} Moreover, "[a]n employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job." *Gayer v. Continental Airlines, Inc.* (C.A.6, 2001), 21 Fed.Appx. 347, citing *Kocsis v. Multi-Care Mgmt., Inc.* (C.A.6, 1996), 97 F.3d 876, 885. See *Green v. Rosemont* (1998), 5 F.Supp.2d 568 (employer's awareness of a hernia operation and of subsequent lifting restrictions does not prove that it regarded the employee as disabled). See, also, *Marziale v. BP Prods. N. Am.* (S.D.Ohio 2007), No. 1:05-CV-741, ("The Sixth Circuit has explained that an employer's perception that health problems are adversely affecting an employee's job performance is not tantamount to regarding that employee as disabled.") citing *Sullivan v. River Valley School Dist.* (C.A.6, 1999), 197 F.3d 804, 810-11, cert. denied (2000), 530 U.S. 1262, 120 S.Ct. 2718, 147 L.Ed.2d 983.

{¶ 20} Finally, McClain alleges that Shaker's reevaluation of the custodian job description overstates the actual duties she had been performing since 1997. We need not reach this issue because McClain's argument is a challenge to Shaker's articulated reason for not reinstating her to the custodian position. McClain argues that the lifting requirements imposed by the revised job description are a pretext to mask discrimination. We need not

address the issue of whether Shaker's revised job description was pretextual because McClain has failed to establish her prima facie case by producing evidence that she was regarded as disabled. See *Gayer* at 351.

{¶ 21} We find that McClain has failed to create a genuine issue of material fact as to whether Shaker regarded her as disabled. Thus, she has failed to establish her prima facie case and therefore, the trial court properly granted summary judgment to Shaker.

Accordingly, McClain's sole assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
COLLEEN CONWAY COONEY, JUDGE

MELODY J. STEWART, P.J., and
KENNETH A. ROCCO, J., CONCUR