[Cite as *Long v KeltanBW, Inc.*, 2024-Ohio-2359.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

NI'JAH LONG,                                         :

    Plaintiff-Appellant,              :

                                     No. 112919

    v.                                             :

KELTANBW, INC.,                                  :

    Defendant-Appellee.             :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  June 20, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No.  CV-22-961143

---

### *Appearances:*

Voudris Law LLC and Stephan I. Voudris, *for appellant*.

Roetzel & Andress LPA, Barry Y. Freeman, and Danielle C. Young, *for appellee*.

---

EMANUELLA D. GROVES, J.:

{¶ 1}  Plaintiff-appellant Ni'Jah Long ("Long") appeals the judgment of the trial court granting defendant-appellee KeltanBW Inc.'s ("KeltanBW") motion for summary judgment on May 29, 2023.  Upon review, we affirm the trial court's decision.

**Factual and Procedural History**

{¶ 2} KeltanBW owns and operates a daycare center, Goddard School of Beachwood ("GSB"), in Beachwood, Ohio. Long began working as a floating assistant teacher at the daycare center on June 8, 2021. Long worked until July 1, 2021, before taking time off to travel to the Dominican Republic for liposuction surgery. At some point before July 1, 2021, Long asked for and was granted time off to care for her fiancé's father while he was recovering from COVID-19. Long returned to work on August 24, 2021, with restrictions on lifting due to her surgery, no more than ten pounds for three months beginning July 19, 2021. KeltanBW assigned Long to the preschool rooms because of the lifting limit. On September 16, 2021, Long took time off to care for her fiancé who was recovering from surgery. The following week Long was late between one to four hours on the days she was assigned.

{¶ 3} The center was short-staffed on October 4 when Long arrived for work. Long was assigned to the infant room. As she bent over to pick up an infant, Long heard a popping sound and realized she had injured her back. On October 5, 2021, Long informed KeltanBW that she had injured her back while bending over to lift an infant the day before and would not return to work until October 11, 2021. Long was terminated on October 9, 2021. KeltanBW alleged the termination was due to poor attendance.

{¶ 4} On March 24, 2022, Long filed a complaint against KeltanBW and claimed workers' compensation retaliation (Count 1); wrongful discharge in

violation of public policy, under R.C. 4123.90 (Count 2); and negligent training and supervision under R.C. 4112.02(J) (Count 3). On July 1, 2022, Long amended her complaint to include disability discrimination (Count 4). KeltanBW answered the amended complaint on July 6, 2022.

{¶ 5} KeltanBW moved for summary judgment and partial judgment on the pleadings on January 23, 2023. The motion for summary judgment was based on the following:

1. Long's wrongful discharge in violation of public policy claim is barred by the parties' stipulation that R.C. 4123.90 controls.

2. Long lacks a prima facie disability discrimination claim.

3. Long was terminated for poor attendance and tardiness; therefore, she cannot establish her disability discrimination and R.C. 4123.90 claims and she cannot demonstrate pretext.

4. Long's negligent training and supervision claims fail on the merits and are preempted by statute.

5. Long's economic damages are limited to the difference between her Goddard School of Beachwood earnings and what she could have earned at another Goddard school.

6. Long cannot recover emotional distress damages because they are all related to her work injury.

(Motion for summary judgment, January 23, 2023).

{¶ 6} Due to the parties' stipulation, the trial court dismissed Count 2, the public policy wrongful termination claim. Additionally, the trial court granted KeltanBW's motion for summary judgment on May 29, 2023. Long timely appeals the trial court's judgment, raising one assignment of error for our review.

## Assignment of Error

The trial court erred in granting appellee's motion for summary judgment because there were genuine issues of material fact after viewing the facts in a light most favorable to the appellant.

**Motion to Strike**

{¶ 7} As a preliminary matter, KeltanBW filed a motion to strike arguments Long made on appeal that she did not raise before the trial court. It is well settled that new arguments and legal issues may not be raised for the first time on appeal, and the failure to raise an issue in the trial court waives that issue for appellate purposes. *Glendell-Grant v. Grant*, 2018-Ohio-1094, ¶ 11 (8th Dist.), citing *Cleveland Town Ctr., L.L.C. v. Fin. Exchange Co. of Ohio, Inc.*, 2017-Ohio-384, ¶ 21 (8th Dist.), and *Kalish v. Trans World Airlines, Inc.*, 50 Ohio St.2d 73, (1977).

{¶ 8} KeltanBW seeks to strike two claims Long raises on appeal, one that she raises for the first time in her reply brief in this court and one that she did not raise before the trial court. Generally, an appellate court will not consider an argument presented for the first time in appellant's reply brief. *State v. Whitaker*, 2022-Ohio-2840, ¶ 52. Therefore, Long's first-time argument in her reply brief that there is a genuine issue of material fact regarding a purported safety rules violation and causation are not properly before us. Accordingly, we grant KeltanBW's motion to strike in part. Long's argument that summary judgment should be reversed based on safety rules violations and causation regarding the workplace injury is stricken from the record and shall not be considered.

{¶ 9} We now turn our review to KeltanBW's claim that Long did not argue she was perceived to have a disability or had a history of disability as a result of her liposuction surgery before the trial court.

{¶ 10} A review of the trial court record reveals Long argued contemporaneously that impairments related to liposuction and the October 4, 2021 workplace injury were the basis for her disability. Long continues these arguments on appeal. Accordingly, the motion to strike the argument related to whether Long's cosmetic surgery was a basis for her disability is denied.

{¶ 11} Consequently, we will consider whether KeltanBW established there was no genuine issue of material fact concerning Long's disability discrimination, retaliation, negligent training, and supervision claims. Upon review, we find that Long failed to produce evidence sufficient to create a genuine issue of material fact regarding each claim in order to overcome the trial court's summary judgment decision.

**Summary Judgment**

{¶ 12} Orders granting or denying motions for summary judgment are reviewed de novo. Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) reasonable minds can come to one conclusion when construing the evidence in a light most favorable to the nonmoving party, and (3) the moving party is entitled to judgment as a matter of law. *Rowe v. Hoist & Crane Serv. Group,* 2022-Ohio-3130, ¶ 36 (8th Dist.). "Once the moving party demonstrates entitlement to summary judgment, the burden shifts to the

nonmoving party to produce evidence related to any issue on which the party bears the burden of production at trial." *Mattress Matters, Inc. v. Trunzo*, 2016-Ohio-7723, ¶ 10 (8th Dist.); Civ.R.56(E). The moving party must identify specific portions of the record that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Pavlick v. Cleveland Hts.-Univ. Hts. Bd. of Edn.*, 2015-Ohio-179, ¶ 6 (8th Dist.), citing *Dresher v. Burt,* 75 Ohio St.3d 280, (1996). If the moving party meets its burden, the nonmoving party may not rest on unsupported allegations and denials in the pleadings to defeat summary judgment. *Phillips v. Acacia on the Green Condo. Assn.*, 2021-Ohio-4521, ¶ 16 (8th Dist.); *Dresher* at 292-293.

**Prima Facia Case of Disability Discrimination**

{¶ 13} In a disability discrimination claim, the employee bears the initial burden of establishing by a preponderance of the evidence a prima facie case of disability[1] discrimination. *Hood v. Diamond Prods.*, 74 Ohio St.3d 298, 302 (1996); *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.,* 66 Ohio St.2d 192, 197 (1981). However, once the employee sets forth evidence of a prima facia case of disability, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for its actions. *Id.* An employer is entitled to summary

---

[1] Cases cited in this opinion use the word "handicap." Effective March 17, 2000 the General Assembly replaced the word "handicap" with "disability" to reflect current usage. The current version of R.C. 4112.02(A) maintains essentially the same definition of "unlawful discriminatory practices" as used in *Hood*. *See Continenza v. Tablack*, 2003-Ohio-6719, ¶ 20 (7th Dist.).

judgment if it demonstrates the absence of genuine issues of fact concerning a material element of the employee's claims. *Id.*

{¶ 14} An employee raising a disability discrimination claim under R.C. 4112.02 establishes a prima facia case when the employee demonstrates 1) they are disabled, 2) the employer took adverse action against them, in part, because of their disability, and 3) they could safely and substantially perform the essential functions of the job with or without reasonable accommodations. *Id.* Ohio Adm. Code 4112-5-08(D)(4) and (E). "A failure to establish all of the elements of a prima facie case is fatal to a disability discrimination claim." *Rongers v. Univ. Hosps. of Cleveland, Inc.*, 2009-Ohio-2137, ¶ 9 (8th Dist.).

**Surgery Recovery as a Basis of Disability**

{¶ 15} KeltanBW demonstrated that Long failed to establish a prima facia claim of disability by showing she offered no evidence that her recovery from surgery qualified as a disability. In support of her argument that she qualifies as a disabled individual under all three definitions Long, alleged 1) she suffered from a physical impairment that substantially limited one or more of her major life activities; 2) she has demonstrated a record of physical or mental impairment; and 3) she has proven that KeltanBW regarded her as having a physical or mental impairment.

**Substantially Limiting Impairment**

{¶ 16} Regarding the first statutory definition of "disabled," Long must establish that she suffered from an impairment that substantially limited her major life activities. The term "substantial limitation" is not defined in R.C. Ch. 4112, but

federal regulations define it. *Anderson v. AccuScripts Pharmacy, L.L.C.*, 2022-Ohio-1663, ¶ 49 (8th Dist.); *Bare v. Fed. Express Corp.*, 886 F.Supp.2d 600, 609 (N.D. Ohio 2012), quoting R.C. 4112.01(A)(13). The determination of whether a physical or mental impairment substantially limits a major life activity is dependent upon "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." *Maracz v. UPS*, 2004-Ohio-6851, ¶ 34-36 (8th Dist.); 29 C.F.R. 1630.2(j)(2). Major life activities are described in R.C. 4112.01(A)(13) and include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

{¶ 17} Long provided her surgeon's note, which restricted her ability to lift no more than ten pounds for three months, as proof of disability. "Whereas lifting is generally considered a major life activity, the inability to lift over a certain weight restriction is, in and of itself, not a disability." *Pavlick*, 2015-Ohio-179, ¶ 12 (8th Dist.); *McClain v. Shaker Hts.*, 2011-Ohio-4418, ¶ 16 (8th Dist.), citing *Dunaway v. Ford Motor Co.*, 134 Fed.Appx. 872, 877 (6th Cir. 2005).

{¶ 18} After Long returned to work, she provided KeltanBW with an employee medical statement for childcare completed by Dr. Michael Peterson. He examined Long on September 17, 2021. He documented no restrictions nor impairments and acknowledged that Long was physically fit for employment in a facility caring for children. Although Long provided evidence of a short-term

impairment in her ability to lift no greater than ten pounds after surgery, she offered no evidence of how the weight restriction substantially limited any of her major life activities.

{¶ 19} Evidence that Long sometimes sat down at work because she was tired and out of breath arguably could be considered impairments. However, demonstrating that an individual has a lifting restriction or some other impairment alone is insufficient to establish that she is disabled. *Id*. at ¶ 26. The impairment must substantially limit one or more major life activities. Long failed to produce such evidence.

**Record of Impairment**

{¶ 20} The second way that Long could demonstrate that she is a disabled individual is by demonstrating a record of impairment under R.C 4112.01(A) (13). *Pavlick*, 2015-Ohio-179, at ¶ 21 (8th Dist.). A record of impairment is established when the employee has a history of long-term or permanent disability, which would qualify her as disabled under R.C. 4112.02. *Yamamoto v. Midwest Screw Prods*., 2002-Ohio-3362, ¶ 42 (11th Dist.). Additionally, "[t]he disability must meet the statutory definition of being a substantial limitation on one or more major life activities." *Id.*

{¶ 21} Long provided much of the same evidence she claimed established an actual disability to demonstrate a record of impairment. As we have already stated, the evidence Long presented was inadequate to establish that she suffered from an actual disability. Furthermore, Long has not established a history of injuries

supporting a record of disability. "'Mere references to previous instances of ill-health. . . are not sufficient evidence of a record of impairment to establish true disability status under R.C. 4112.02.'" *Pavlick* at ¶ 21 quoting *Yamamoto* at ¶ 43.

{¶ 22} Long fails to demonstrate a record of disability. Instead, the record reflects that the nature of any limitations caused by Long's claimed impairments after surgery were minor and of short duration. She could still care for herself, work, perform manual tasks, walk, see, hear, speak, and breathe, even though she was tired and sat down sometimes at work. Long cared for herself and others during that time. For instance, while under the weight restriction, Long requested time off to care for her fiancé after he underwent surgery. Long has offered no evidence that she suffered from any impairments that substantially limited her major life activities before the workplace injury. Accordingly, Long failed to demonstrate a record of disability under the second statutory definition of "disabled."

**Regarded as a Disabled Individual**

{¶ 23} The third qualifying manner Long may prove she is a disabled individual is by establishing that KeltanBW regarded her as having a disability under R.C. 4112.02(A). Long claims KeltanBW's willingness to accommodate her weight-lifting restriction proves she was regarded as having a disability. We find Long's argument lacks merit.

{¶ 24} Long offered evidence that KeltanBW accommodated her temporary weight-lifting restriction by assigning her to classrooms that did not require Long to lift babies while recovering from surgery. Long's physician's note stated that the

lifting restriction was ten pounds for only three months. Furthermore, even if the lifting limit was considered an impairment, Long failed to present evidence that the impairment was significant or expected to last longer than six months.

{¶ 25} When an injury is transitory and minor, the third qualifying meaning of a disabled individual, whereby the employer regards the employee as disabled, is inapplicable. *Thomas v. PNC Bank N.A.,* 2018-Ohio-4000, at ¶ 12 (8th Dist.). "A transitory impairment is an impairment with an actual or expected duration of six months or less." *Id.* at ¶ 7; 42 U.S.C. 12102(3)(B). The record contains evidence that the restrictions on lifting were expected to last for three months. We find that Long's three-month weight-lifting restriction after liposuction surgery was transitory and minor.

{¶ 26} There is no evidence that KeltanBW's accommodation was intended to be permanent. The record supports the opposite conclusion. Two months post-surgery, Long presented KeltanBW with an employee medical statement for childcare after she was examined on September 17, 2021. (Long deposition Exhibit M-4). Long's physician, Dr. Michael Peterson, did not indicate that Long had any substantial impairments. Despite Long's three-month weight-lifting restriction, her physician indicated she was physically fit for employment in a facility caring for children. Long has not demonstrated that her alleged impairments impacted one or more major life activities or that the duration of her recovery was expected to be six months or more. The record contains no evidence that KeltanBW regarded Long as

disabled for purposes of R.C. 4112.02(A). Consequently, the third qualifying meaning of disability for purposes of R.C. 4112.02 is inapplicable to these facts.

{¶ 27} KeltanBW demonstrated its entitlement to summary judgment regarding Long's claim that she was disabled before her workplace injury because of liposuction surgery. Long has failed to point to evidence that would overcome KeltanBW's argument that Long failed to demonstrate a prima facia case that she was disabled under any of the three statutory definitions of a "disabled individual." Accordingly, KeltanBW's motion for summary judgment was properly granted regarding Long's disability discrimination claims related to her liposuction surgery and before her workplace injury.

**Workplace Injury as a Basis for Disability Discrimination Claim**

{¶ 28} We now turn to Long's workplace injury. Since Long must satisfy all three prima facia elements for a disability discrimination claim, we will focus on the third element, i.e., ability to substantially perform. On October 4, 2021, Long injured her back while bending to lift a child. The next day, Long went to her doctor, Dr. Michael Peterson for treatment. Additionally, Long saw Dr. Jessica Dilley on October 13, 2021, and Dr. Robert Whitehead, M.D., on November 8, 2021.

{¶ 29} Long was diagnosed with muscle, fascia, and tendon strain of her lower back's thoracic and lumbar regions. Long was not released to return to work for six days because she was temporarily and totally disabled during that time.

{¶ 30} The third prong requires Long to demonstrate that, although disabled, she could safely and substantially perform the job's essential functions

with or without reasonable accommodations. "Regular attendance and ability to perform the work are an essential function of any position." *Coco v. Beyesly's Restaurant*, 2021-Ohio-4201, ¶ 18 (5th Dist.). Long's treating physician completed the necessary paperwork indicating that she was temporarily, totally disabled, and unable to work at all, from October 5-11, 2021.

{¶ 31} Therefore, Long could not demonstrate a genuine issue of material fact concerning her ability to work after her workplace injury. Accordingly, summary judgment was proper concerning Long's disability discrimination claims.

**Workers' Compensation Retaliation**

{¶ 32} Long also claims that summary judgment was improper on her workers' compensation retaliation claim. Here, KeltanBW claims summary judgment was proper because Long was terminated because of her poor attendance and excessive tardiness, not in retaliation for filing a workers' compensation claim.

{¶ 33} An employer has committed workers' compensation retaliation under R.C. 4123.90 if the employer discharged, demoted, reassigned, or took any other punitive action against the employee in retaliation for the employee filing a workers' compensation claim or instituting, pursuing, or testifying in any proceedings under the Workers' Compensation Act. *Onderko v. Sierra Lobo, Inc.*, 2016-Ohio-5027, ¶ 27.

{¶ 34} An employee demonstrates a prima facia case of workers' compensation retaliation under R.C. 4123.90 by establishing 1) that the employee was injured on the job, 2) the employee filed a claim for workers' compensation

benefits, and 3) that the employee was discharged in violation of R.C. 4123.90 *Dragmen v. Swagelok Co.*, 2014-Ohio-5345, ¶ 18 (8th Dist.). Once the employee establishes each element of a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for terminating the employee. *Id.*

{¶ 35} In this case, KeltanBW admitted that Long suffered a workplace injury and filed a workers' compensation claim. KeltanBW also acknowledged terminating Long. Therefore, the first two prongs of a prima facia claim of workers' compensation retaliation are met. Arguably, the third prong was also met because KeltanBW terminated Long shortly after she filed her workers' compensation claim. However, KeltanBW claims the termination was due to poor attendance and excessive tardiness, not because Long pursued a workers' compensation claim. In support of their argument, KeltanBW offered Long's time sheets, several text messages, and deposition testimony to demonstrate that during Long's brief employment at GSB, her attendance was poor, and she was often late. In response, Long claims KeltanBW admitted firing her for an illegal reason. Long points to KeltanBW's motion for summary judgment.

> Immediately after, Ms. Long called Defendant's owner, Dr. Kristina Turk, and told her that she "could not come to work because she hurt her back lifting, babies" and that "Dr. Turk *had enough. . .* Long couldn't work when [Defendant] needed her most."

(Defendant's summary judgment motion ¶ 3).

{¶ 36} Moreover, Long alleges that the proximity of the date of her workplace injury on October 4, 2021, was a sufficient nexus to her October 9, 2021 termination date to create a genuine issue of material fact regarding her retaliation claim. We find Long's argument unpersuasive.

{¶ 37} Once the moving party has met its burden of establishing no genuine issue of material fact, the burden shifts to the nonmoving party to present evidence in rebuttal and more than just self-serving statements. *Acacia on the Green Condominium Assn.*, 2021-Ohio-4521, ¶ 16; *Dresher,* 75 Ohio St.3d 280 at 292-293.

{¶ 38} The record clearly demonstrates that Long was fired for poor attendance and excessive tardiness. KeltanBW was concerned about Long's attendance and tardiness issues unrelated to her surgery or workplace injury in September. She worked for KeltanBW from June 8, 2021, until October 9, 2021. During that time Long, missed work to care for her fiancé's father and her fiancé and was late several days. Poor attendance is a legitimate nonretaliatory reason to terminate an employee. *Baradji v. Zulily*, 2018-Ohio-304, ¶ 14 (10th Dist.).

{¶ 39} Even if this court were to find that Long met her burden of demonstrating a prima facia case of retaliatory termination, KeltanBW has offered a legitimate basis for terminating Long. Thus, the shifting burden requires Long to provide some evidence that KeltanBW's proffered, legitimate reason was pretextual. *Phillips,* 2021-Ohio-4521, at ¶ 16. An employee can establish that the employer's proffered reason for termination is a pretext for discrimination by demonstrating by a preponderance of evidence, the stated reason 1) had no basis in fact, 2) was not the

actual reason for the termination, or 3) was insufficient to explain the employer's action. *Love v. Columbus*, 2021-Ohio-3494; ¶ 20 (10th Dist.), quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993), citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

{¶ 40} Long alleges that Dr. Turk's statement that "I don't have time for this . . ." and hanging up the phone on her is more than enough evidence that her attendance and tardiness were pretexts for retaliation. The record fails to indicate that KeltanBW's stated reason of Long's poor attendance was not based in fact. Long admitted that she took several days off and was tardy a lot. Long's reliance on conjecture is not evidence of pretext. Long has failed to demonstrate that KeltanBW's stated reasons for terminating her was a pretext for retaliatory termination because she filed a workers' compensation claim. The trial court properly granted summary judgment in favor of KeltanBW on Long's workers' compensation retaliation claim under R.C. 4123.90.

**Negligent Supervision and Training**

{¶ 41} Long argues that the trial court erred in dismissing her negligent supervision and training claims by summary judgment. Long claims that KeltanBW failed to train and supervise employees regarding disability accommodations and discrimination in violation of R.C. 4112.02(J). Under R.C. 4112.02(J) it is an unlawful discriminatory practice:

> For any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or

any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice.

{¶ 42} The elements of negligent supervision claims are the same as those for negligent training. *Francis v. Northeast Ohio Neighborhood Health Servs.*, 2021-Ohio-3928, ¶ 23 (8th Dist.). To prevail on negligent hiring, supervision and training actions, the injured party must prove:

1) the existence of an employment relationship; 2) the employee's incompetence; 3) the employer's actual or constructive knowledge of such incompetence; 4) the employee's act or omission causing the plaintiff's injuries; and 5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. *Id.*

{¶ 43} Long cites *Rivers* to support her claim that summary judgment was improper. *Rivers v. Cashland Fin. Servs.*, 2013-Ohio-1225, ¶ 4 (9th Dist.). In *Rivers*, the court reversed the summary judgment decision because there was a genuine issue of material fact concerning whether the employee was a victim of retaliatory discharge and racial or disability discrimination due to the alleged incompetent employee's conduct. *Id.* We find *Rivers* distinguishable from these facts.

{¶ 44} Here, Long argues that KeltanBW failed to train its employees to make reasonable accommodations for disabilities. Furthermore, Long claims that KeltanBW failed to supervise employees to ensure they did not terminate employees for illegal reasons. However, Long failed to identify an employee or conduct that rose to an actionable tort. Moreover, there is no material question of fact concerning Long's underlying claims of disability discrimination and workers' compensation

retaliation. Consequently, Long cannot establish that an incompetent employee committed a legally wrongful act or omission that harmed her.

{¶ 45} Long argues that KeltanBW's alleged negligent training and supervision arose from Long's workplace injury and employment discrimination claims. KeltanBW counters that these claims are preempted by the workers' compensation and employment discrimination statutes. We agree the workers' compensation statutes under R.C. Ch. 4123 provide the exclusive remedy for injured workers. *Bickers v. W. & S. Life Ins. Co.*, 2007-Ohio-6751, ¶ 23. We "may not override this choice and superimpose a common-law, public-policy tort remedy on this wholly statutory system." *Id.* Therefore, Long's claim for negligent training is preempted under R.C. Ch. 4123.

{¶ 46} Furthermore, negligence claims based on an underlying employment discrimination claim must be pursued under R.C. Ch. 4112, which provides the exclusive remedy for pure employment discrimination claims; *Dworning v. Euclid,* 2006-Ohio-677, ¶ 16-17 (8th Dist.), quoting *Helmick v. Cincinnati Word Processing, Inc.,* 45 Ohio St.3d 131, 133-135 (1989). Accordingly, the trial court did not err in granting KeltanBW's motion for summary judgment on Long's negligent supervision and training claims.

**Appellant's After-Acquired Evidence**

{¶ 47} Long claims that evidence of her improper time sheet documentation is after-acquired evidence and cannot be considered for summary judgment.

{¶ 48} The after-acquired evidence doctrine allows a defendant employer to show they would have terminated the employee anyway if they had had the evidence in question. *O'Brien v. Ohio State Univ.*, 2007-Ohio-4833, ¶ 81 (10th Dist.). If applicable, the doctrine limits damages at trial. *Id.* As we have found that Long failed to establish that there was a genuine issue of material fact to any of her claims, damages are not an issue. Therefore, the after-acquired evidence doctrine is not applicable under these facts.

{¶ 49} Finally, after construing the evidence in a light most favorable to Long, reasonable minds can come to only one conclusion, and the conclusion is adverse to Long. We find no genuine issue of material fact regarding Long's claims. Therefore, KeltanBW is entitled to summary judgment as a matter of law. Accordingly, Long's assignment of error is overruled.

{¶ 50} Judgment affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MARY EILEEN KILBANE, P.J., and
MICHAEL JOHN RYAN, J., CONCUR